# In the United States Court of Federal Claims

No. 04-1792 C

(Filed: August 8, 2007)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **A.A.B JOINT VENTURE,** * | |
| * | |
| Plaintiff, * | Motion for reconsideration; summary |
| * | judgment; defective specifications; soil |
| v. * | compaction; density testing; reliance; |
| * | hearsay evidence; drawing inferences |
| **THE UNITED STATES,** * | |
| * | |
| Defendant. * | |
| * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Brian Cohen*, Bell, Boyd & Lloyd, PLLC, Washington, D.C., for Plaintiff. *Philip Clark Jones*, of counsel.

*Shalom Brilliant*, Senior Trial Counsel, *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant. *Paul Cheverie*, Command Counsel, *Brett Howard*, Assistant Command Counsel, Europe District, U.S. Army Corps of Engineers, of counsel.

-------

## OPINION

-------

**DAMICH**, Chief Judge.

## I.    Introduction

On February 16, 2007, Defendant filed a Motion for Reconsideration of the Court's February 2, 2007, opinion on the parties' cross-motions for summary judgment. *AAB Joint Venture v. United States*, 75 Fed. Cl. 414 (2007). The Court's earlier opinion found in favor of Plaintiff on the issue of liability due to defective specifications, leaving only a determination on the amount of damages remaining. Pursuant to an order by the Court, Plaintiff filed a response to Defendant's Motion for Reconsideration on March 9, 2007, and Defendant filed a reply to Plaintiff's response to Defendant's motion on March 16, 2007. For the reasons set forth below, Defendant's motion is DENIED.

## II.      Standard for Decision

Reconsideration of a prior decision by the court is grounded in Rule 59(a)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC").[1]  The decision whether or not to grant a motion for reconsideration is in the sound discretion of the trial court.  *Yuba Natural Res. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990); *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 73 Fed. Cl. 154, 157 (2006); *Henderson County Drainage District No. 3 v. United States*, 55 Fed. Cl. 334, 337 (2003); *Franconia Assocs. v. United States*, 44 Fed. Cl. 315, 316 (1999); *Fru-Con Constr. Co. v. United States*, 44 Fed. Cl. 298, 301 (1999); *Seldovia Native Assoc. Inc. v. United States*, 36 Fed. Cl. 593, 594 (1996).  The court must exercise extreme care in deciding such a motion.  *Carter v. United States*, 518 F.2d 1199, 1199 (Fed. Cir. 1975); *Chippewa Cree Tribe*, 73 Fed. Cl. at 157; *Henderson County Drainage*, 55 Fed. Cl. at 337; *Fru-Con Constr.*, 44 Fed. Cl. at 301; *Seldovia Native Assoc.*, 36 Fed. Cl. at 594.  The purpose served is not to afford a party dissatisfied with the result an opportunity to reargue its case.  *Roche v. District of Columbia*, 18 Ct. Cl. 289, 290 (1883); *Chippewa Cree Tribe*, 73 Fed. Cl. at 157; *Henderson County Drainage*, 55 Fed. Cl. at 337; *Fru-Con Constr.*, 44 Fed. Cl. at 301; *Seldovia Native Assoc.*, 36 Fed. Cl. at 594; *Principal Mutual Life Ins. Co. v. United States*, 29 Fed. Cl. 157, 164 (1993); *Bishop v. United States*, 26 Cl. Ct. 281, 286 (1992).  A motion for reconsideration "is not intended to give an unhappy litigant an additional chance to sway the court."  *Circle K Corp. v. United States*, 23 Cl. Ct. 659, 664-65 (1991); *see also Chippewa Cree Tribe*, 73 Fed. Cl. at 157; *Henderson County Drainage*, 55 Fed. Cl. at 337;  *Fru-Con Constr.*, 44 Fed. Cl. at 301; *Bishop*, 26 Cl. Ct. at 286.

The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact. *Henderson County Drainage*, 55 Fed. Cl. at 337; *Fru-Con Constr.*, 44 Fed. Cl. at 300; *Chippewa Cree Tribe*, 73 Fed. Cl. at 157; *Franconia Assocs.*, 44 Fed. Cl. at 316; *Seldovia Native Assoc.*, 36 Fed. Cl. at 594; *Principal Mutual Life*, 29 Fed. Cl. at 164; *Bishop*, 26 Cl. Ct. at 286.  The motion must have one of the following bases: (1) an intervening change in controlling law has occurred; (2) previously unavailable evidence is now available; or (3) reconsideration is necessary to prevent manifest injustice.  *Chippewa Cree Tribe*, 73 Fed. Cl. at 157; *Henderson County*

---

[1] RCFC 59(a)(1) provides:

> A new trial or rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States.  On a motion under this rule, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

*Drainage*, 55 Fed. Cl. at 337; *Fru-Con Constr.*, 44 Fed. Cl. at 301; *Bishop*, 26 Cl. Ct. at 286.

## III.    Analysis

In its motion for reconsideration, Defendant apparently relies on the third basis, namely, that reconsideration is necessary to prevent manifest injustice.  Defendant raises three principal arguments averring that the Court made a manifest error of law or mistake of fact in rendering its decision on the parties' cross-motions for summary judgment.  First, Defendant contends that the Court made a determinative finding of fact in Plaintiff's favor based on evidence that was not offered for the truth of its contents and that, if so offered, would have been inadmissible hearsay.  Second, Defendant argues that the Court drew factual inferences in favor of Plaintiff as movant, contrary to summary judgment standards.  Finally, Defendant argues that the Court made a determinative finding of fact in Plaintiff's favor without considering evidence offered by Defendant which clearly controverted this fact.

The Court notes that both parties switched positions during the course of briefing on the cross-motions for summary judgment, making the Court's task of evaluating evidence and considering burdens of proof especially challenging.[2]

### A.    Consideration of Inadmissible Hearsay Evidence

Defendant first asserts that the Court, in its determination that the modified AASHTO compaction test could not be performed with the maximum 6-inch stone size, relied on the statement by Isotop Ltd. ("Isotop"), the subcontractor who performed the compaction test.  Defendant contends that the Isotop statement was offered by Defendant, not by Plaintiff, and was not offered for the truth of its contents but rather as background information regarding the sequence of events leading up to Plaintiff's instruction to its subcontractor, Rolider Ltd. ("Rolider"), to limit the maximum stone size to 3 inches rather than 6 inches in the top 1.5 meters of fill.  Defendant further contends that, upon offering the Isotop statement, Defendant expressly disputed the truth of its contents.  If the statement had been offered for the truth of its contents, Defendant contends that it would have objected to its admission as inadmissible hearsay evidence.  Defendant argues that, pursuant to RCFC 56(e), hearsay evidence may not be offered in deciding a motion for summary judgment.[3]  To support its argument, Defendant cites

---

[2] For example, only in the midst of the briefing did the parties finally agree that the "modified AASHTO" compaction test referred to in the contract is AASHTO T-180 or ASTM D-1557.  Def.'s Resp. to Pl.'s Mot. Summ. J. at 10-11.

[3] RCFC 56(e) states:
> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

*Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 680-81 (Fed. Cir. 1997).  In *Scosche*, the plaintiff produced, in opposition to the defendant's motion for summary judgment, a declaration by *Scosche*'s president stating what a customer had told him.  The court held that, because the declaration constituted hearsay and therefore failed to comply with Rule 56(e), it was insufficient to overcome the summary judgment motion.

The Court acknowledges that its opinion incorrectly suggested that it was Plaintiff, not Defendant, who provided the Isotop letter to the Court.[4]  The Court merely intended to establish that Plaintiff relied on the opinion of Isotop in determining that an incompatibility existed between the maximum stone size requirement and the designated compaction test in the contract.  To the extent that the opinion identified Plaintiff as the party that produced the letter, the Court hereby corrects the error.  The Court further notes that Defendant's Proposed Findings of Uncontroverted Fact stated:

> In or around late 2001, ISOTOP stated to AAB that it could not test six inch (15cm) material for density according to the modified A.A.S.H.T.O. standard.  ISOTOP subsequently confirmed this assertion in writing, by letter dated February 24, 2004.

Def.'s FF ¶ 13 (citations omitted).  Thus, as in *Scosche Indus.*, Defendant, as the non-moving party, offered the Isotop letter attached to its opposition to Plaintiff's motion for summary judgment.  However, in *Scosche Indus.*, it was the moving party that objected to submission of hearsay evidence by the non-moving party.  In contrast, here, Defendant, the non-moving party, is objecting to consideration by the Court of evidence introduced by itself, the non-moving party.  Only now, after the Court has considered the Isotop letter in rendering its decision on the parties' cross-motions for summary judgment does Defendant cry "hearsay."

The law is clear that a party offering evidence "opens the door" and waives its right to object to the entry of that evidence.  The immediate effect of introducing evidence is the loss of the right to exclude the evidence or to claim that admitting the evidence was other than harmless error.  *United States v. Washington*, 434 F.3d 7, 11 (1st Cir. 2006); *United States v. Allen*, 76 F.3d 1348, 1365-66 (5th Cir. 1996); 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 12, at 48 (2d ed. 1994).  Thus, courts are generally on solid ground in refusing to let parties complain about evidence they themselves introduce.  Mueller et al. § 12, at 49; *see, e.g.*, *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) (finding that when defendants submitted unsworn letters in support of their motion for summary judgment they waived any objections to their admissibility).

Furthermore, on a summary judgment motion, the Court may consider evidence in a form that is not admissible for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Hearsay

---

[4] In fact, the Isotop statement and letter were introduced as attachments to Defendant's response to Plaintiff's motion for summary judgment.

evidence may be considered by a court provided the out-of-court declarant would be available to testify as to the evidence at trial, *Tatum v. Cordis Corp.*, 758 F. Supp. 457, 463 (M.D. Tenn. 1991), particularly if the evidence is corroborated or the court concludes that it is sufficiently reliable. *DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.*, 899 F. Supp. 91 (N.D.N.Y. 1995). Several federal courts either have allowed hearsay evidence, where the evidence could ultimately be cured by sworn affidavit or testimony, or have permitted an opportunity to cure the deficiency. *Capobianco*, 422 F.3d at 55 (finding that to exclude the letters would prejudice plaintiffs who otherwise could have obtained sworn affidavits reiterating what was in the letters); *Maytag Corp. v. Electrolux Home Products, Inc.*, 448 F. Supp. 2d 1034, 1063-64 (N.D. Iowa 2006) (holding that although unsworn statements are generally inadmissible at the summary judgment stage, it may be possible to "cure" the deficiency of an unsworn statement by providing a subsequent affidavit or testimony reiterating or reaffirming the opinions in the unsworn report); *Strauss v. DVC Worldwide, Inc.*, No. H-04-4625, 2007 WL 1097858, at * 11 (S.D. Tex. 2007) (finding that while an unsworn expert report did not constitute admissible summary judgment evidence, the deficiency was cured by the filing of a sworn declaration).

The Court finds that consideration of the Isotop letter was proper. Defendant, by introducing the Isotop letter into evidence, waived any subsequent right to object to its admissibility. Moreover, for the Court to have excluded the Isotop letter from evidence in rendering its decision on summary judgment would have prejudiced Plaintiff who otherwise could have obtained a sworn affidavit by Mr. Michael Shandalov, the author of the Isotop letter. The Court was free to consider the Isotop letter, particularly here, where the contents of the letter were corroborated by the modified AASHTO compaction test specifications and where the Court determined the letter to be reasonably reliable.

Defendant avers that because it offered the Isotop letter for another purpose and voiced its concerns regarding the truth of its contents,[5] it did not waive its right to later object to the letter as hearsay evidence, but Defendant fails to cite any authority to support this proposition. Further, the Court can find no authority to suggest that it is to consider each and every piece of evidence only for the purpose for which it was intended. To the contrary, courts are given wide latitude in considering any document of record in its analysis of a summary judgment motion, regardless of when the document was filed and for what purpose. For example, an affidavit that is on file in a case, regardless of the purpose for which it was prepared and filed, can be considered by the court in deciding a motion for summary judgment. *See Carmona v. Toledo*, 215 F.3d 124, 132 n.7 (1st Cir. 2000); *McLaughlin v. Liu*, 849 F.2d 1205, 1206 n.3 (9th Cir. 1988); *McCullough Tool Co. v. Well Surveys, Inc.*, 395 F.2d 230, 236 n.7 (10th Cir. 1968);10A Charles Alan Wright,

---

[5] Specifically, in its response to Plaintiff's motion for summary judgment, Defendant argued that both the Isotop statement and letter were self-serving since Isotop had a fixed price contract with AAB and hence had every reason to try to avoid any added costs in performing the compaction tests. Def.'s Resp. at 12. Defendant also pointed to minutes from an AAB Progress Meeting, which stated, in unclear context, that "ISOTOP is very biased on this issue." Def.'s App. at 73.

Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure § 2722, at 378 (3d ed. 1998). Therefore, the Court did not err in considering the Isotop letter in its overall determination of whether or not the contract specifications were defective.

Finally, even if the Court did err in considering the Isotop letter, it was harmless error because the Court did not rely solely on the Isotop letter in finding that the contract specifications were defective. The Court also relied on the AASHTO T-180 and ASTM D-1557 compaction test specifications, as discussed further below.

## B.    Inferences Made in Favor of Plaintiff

Defendant contends that the Court, in concluding that the modified AASHTO test could not be performed with fill containing 6-inch stone because the size of the mold was less than 6 inches,[6] improperly inferred that 6-inch stone had to be utilized in the test. In so doing, Defendant contends that the Court improperly drew inferences in favor of Plaintiff, the moving party, regarding a factual issue not directly addressed by the evidence of record. Defendant argues that there is nothing in the AASHTO T-180 compaction test specification that prohibits exclusion of larger stones from the test specimen in performing the test. In a footnote, Defendant proffers that the Court failed to consider, for example, whether the use of a field test might obviate the need to use 6-inch stone in the modified AASHTO compaction test. Defendant avers that even if the inference made by the Court was permissible in denying Defendant's motion for summary judgment, the inference was not permissible in granting Plaintiff's motion for judgment.

The Court disagrees that an improper inference was made. In fact, the Court disagrees that an inference was made at all. The Court simply explained, as background information, that the function of a compaction test is to determine the relationship between moisture content and soil density when exposed to a given compaction pressure in order to ascertain the moisture content that should be utilized when compacting the soil. This is well documented in both the AASHTO T-180 and ASTM D-1557 compaction test specifications. Pl.'s App., Ex. A, Attach. 12 ¶ 1.1, Attach. 13 ¶ 1.1. The Court then went on to state that the size of the mold required to perform the modified AASHTO soil compaction test is smaller than the maximum stone size permitted by the contract. This is also clear from the compaction test specifications. *Id*. No inference whatsoever is required for the Court to thereby state what is evident, namely, that the modified AASHTO compaction test cannot be performed with 6-inch stone. Although the Court also stated that the soil sample to be tested should be representative of the soil to be compacted, such a statement is hardly an inference at all. There is nothing remarkable about the scientific

---

[6] Although Defendant asserts that Plaintiff did not raise the issue of the size of the mold until its reply brief, the Court fails to find any prejudice. The issue of the inconsistency between the modified AASHTO compaction test and the maximum stone size was discussed by Defendant in its opening brief. If Defendant had evidence to show that an inconsistency did not exist, Defendant had more than ample opportunity to present it to the Court.

principle that a test sample should be representative of that which is to be tested.  Defendant does not offer evidence to the contrary.  Although Defendant proffers that 6-inch stone could be excluded from the sample and that the test could still be performed for its intended purpose, this argument is not backed up by supporting evidence.[7]  Moreover, Defendant notably fails to address the final issue raised by the Court in its opinion regarding the allowable proportion of fill of maximum stone size.  The Court noted that while stone of maximum size (6 inches) was limited by the contract to 20% of total fill, there was no limitation on stone of less than maximum size, e.g., stone of 5.5 inches.  So, for example, the contract allowed for the utilization of fill with a uniform size of 5.5 inches.  Defendant fails to offer any evidence to show how such fill could effectively be tested with the modified AASHTO compaction test.  The Court, therefore, did not err in concluding that there was an incompatibility between the designated compaction test and the maximum stone size and that the contract specifications were defective.

### C.    Failure to Address Evidence Showing Controverted Fact

Finally, Defendant asserts that the Court erroneously overlooked evidence offered by Defendant which controverts Plaintiff's evidence showing that it relied on the defective specifications and, hence, the Court failed to recognize that a genuine issue of controverted fact existed.  Defendant argues that the Court, in its opinion, mentions only the declarations of Mr. Dennison S. Keeney and of Mr. Mordehai Rubenstein provided by Plaintiff in support of reliance, but ignores the evidence of non-reliance submitted by Defendant.  In particular, Defendant points to the earlier deposition testimony of Mr. Keeney.[8]  Defendant contends that

---

[7] To support its position, Defendant simply points to the acknowledgment by the Court that the AASHTO T-180 test description states that if oversize particles are contained in the test specimen and are removed during the sieve procedure, appropriate corrections must be made. Defendant asserts that this statement supports its argument that oversize stones may be removed from the sample without making the test unworkable.  The Court referenced that portion of the compaction test specifications to reinforce its conclusion that the soil sample used in the test must be representative of the soil to be compacted and that, if even minor differences occur, appropriate corrections must be made (i.e., during field testing).  Defendant's suggestion that the 6-inch stone could be excluded from the modified AASHTO compaction test and then appropriate corrections made during field testing hardly supports a genuine compatibility between the modified AASHTO compaction test and the maximum stone size.  Defendant simply provides no evidence to support its proposition that the modified AASHTO test could be utilized satisfactorily to determine the relationship between moisture content and soil density with fill material containing stone greater than the size of the mold.

[8] Mr. Keeney's deposition testimony is as follows:
  Q.    How, if at all, did the assumptions regarding the ability to use
         six-inch stone affect the Joint Venture's bid?
  A.    It didn't
  Q.    In what way, if at all, did the Joint Venture rely on an

although Mr. Keeney attempts to explain away his earlier deposition testimony in his declaration, the deposition testimony still exists.  According to Defendant, the declaration of Mr. Keeney does not trump his deposition testimony, but rather raises a genuine issue of controverted fact.[9]

As stated in the Court's opinion, a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a mater of law.  RCFC 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Sweat Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562-63 (Fed. Cir. 1987).  A genuine issue is one that "may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.  A material fact is one which might affect the outcome of the litigation under the substantive law.  *Id*.  Here, while the Court determined that the issue of reliance was indeed a material fact, the Court concluded that there was no genuine issue.

Defendant has inferred that because the Court did not mention the Keeney deposition in its opinion, the Court did not consider it.  However, the Court did in fact consider the Keeney deposition, but found that it was ambiguous and did not necessarily contradict the Keeney declaration.  In fact, Keeney, in his declaration, clarified that his earlier testimony should not be construed to mean that AAB did not factor in the cost of crushing rock to 6 inches and no smaller in arriving at its bid price, but merely that neither party was aware of a problem with 6-inch stone during bidding.  Based on the overwhelming evidence of reliance presented by Plaintiff and referenced in the opinion, the Court did not find that the issue could reasonably be resolved in favor of Defendant, but only in favor of Plaintiff.[10]  To the extent that the Court did not even

---

assumption about the ability to use six-inch stones in preparing its bid?

A.   It didn't come up during the bid.

[9] To attempt to buttress its argument, Defendant also points to evidence that was provided with its motion for summary judgment to argue a separate issue, contract interpretation. Defendant does not cite to the portion of its brief that referred to such evidence; however, the Court finds the evidence to be cited in Defendant's brief where it argues that Plaintiff's contemporaneous actions demonstrated that Plaintiff interpreted the contract not to contain an inconsistency between the maximum stone size provision and the required compaction test. Def.'s Mot. Summ. J. at 18.  By Defendant's own admission, therefore, the evidence referred to in its motion for summary judgment was evidence of actions during contract performance, not actions during bid preparation which would be relevant to the issue of reliance.

[10] Defendant further argues that neither the Keeney declaration nor the documents cited therein show that the fact that AAB planned to crush stone to 6 inches actually affected its bid price; however, this is clearly an attempt by Defendant to reargue its case and the Court need not address this argument.  Nevertheless, the Court finds Defendant's argument to be flawed.  In essence, Defendant seems to be arguing that the Court must find that Plaintiff considered the

8

mention the evidence presented by Defendant, the Court hereby corrects that omission. Nevertheless, the outcome remains the same and, by arguing the issue now on reconsideration, Defendant is essentially asking the Court to reconsider arguments which were made in its earlier briefs. The purpose served by a motion for reconsideration is not "to give an unhappy litigant an additional chance to sway the court." *Circle K*, 23 Cl. Ct. At 664-65; *see also Chippewa Cree Tribe*, 73 Fed. Cl. at 157; *Henderson County Drainage*, 55 Fed. Cl. at 337; *Fru-Con Constr.*, 44 Fed. Cl. at 301; *Bishop*, 26 Cl. Ct. at 286. In sum, the Court does not find that Defendant has successfully identified an error in the Court's factual analysis regarding reliance.

## IV.    Conclusion

Defendant's Motion for Reconsideration of the Court's February 2, 2007, opinion is DENIED.

The Court ORDERS the parties to file a Joint Status Report on or before **August 29, 2007**, discussing how they propose to proceed.

 s/ Edward J. Damich   
EDWARD J. DAMICH
Chief Judge

---

difference in cost between crushing stone to 6 inches and crushing stone to 3 inches or some other size in arriving at its bid price. However, there would be no need for Plaintiff to even consider the cost of crushing to 3 inches if it relied on and expected to be able to crush stone to 6 inches. Moreover, there is ample evidence of a significant difference in price between crushing stone to the two sizes.